**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dalal Allami,<br><br>        Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>        Defendant. | No. CV-20-02162-PHX-DWL<br><br>**ORDER** |

At issue is the denial of Plaintiff Dalal Allami's application for supplemental security income benefits by the Social Security Administration ("SSA") under the Social Security Act. Plaintiff filed a complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 20, "Pl. Br."), Defendant SSA Commissioner's Response Brief (Doc. 25, "Def. Br."), and Plaintiff's Reply (Doc. 32, "Reply"). The Court has reviewed the briefs and Administrative Record (Docs. 13-1 to 13-11, "R.") and now reverses the Administrative Law Judge's ("ALJ") decision (R. 14-25) and remands for an award of benefits.

I.    **Background**

Plaintiff filed her application for benefits on May 2, 2017, alleging disability beginning on March 1, 2007. (R. 14.) Plaintiff's claim was denied initially on October 12, 2017, and upon reconsideration on May 8, 2018. (*Id.*) On January 31, 2020, Plaintiff appeared before the ALJ for a hearing on her claim, and on April 14, 2020, the ALJ denied Plaintiff's claim. (*Id.* at 11, 14.) The Appeals Council later denied Plaintiff's request for

review. (*Id.* at 1.)

The Court has reviewed the medical evidence and will discuss the pertinent evidence in addressing the issues raised by the parties. Upon considering the medical evidence and opinions, the ALJ evaluated Plaintiff's disability based on the following severe impairments: degenerative disc disease, frontal lobe dysfunction, major depressive disorder, anxiety, and PTSD. (*Id.* at 16.)

Ultimately, the ALJ evaluated the medical evidence and testimony and concluded that Plaintiff was not disabled from May 2, 2017 through the date of the decision. (*Id.* at 25.) The ALJ found that Plaintiff does "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926)." (*Id.* at 17.) Next, the ALJ calculated Plaintiff's residual functional capacity ("RFC"), finding Plaintiff had the RFC to:

> perform light work as defined in 20 CFR 416.967(b) except the claimant can frequently climb and crawl; frequently reach with the left (non-dominant or dominant) upper extremity; can have frequent exposure to moving mechanical parts and unprotected heights; can understand, remember, and carry out instructions not exceeding the complexity of GED reasoning level 1; can tolerate occasional changes in the work setting; can tolerate occasional interaction with supervisors and coworkers; can tolerate occasional contact with general public; cannot perform fast-paced work such as assembly line work or work requiring hourly quotas.

(*Id.* at 19.)

Accordingly, although the ALJ found that Plaintiff "has no past relevant work" (*id.* at 23), the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (*Id.* at 24.) Considering testimony from the vocational expert, the ALJ found that Plaintiff was capable of performing work as a "cleaner," "material distributor," or "hand packer." (*Id.*)

II. **Legal Standard**

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *Lewis v. Apfel*, 236 F.3d 503, 517

1  n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination
2  only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*,
3  495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a
4  reasonable person might accept as adequate to support a conclusion considering the record
5  as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court
6  must consider the record as a whole and may not affirm simply by isolating a "specific
7  quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to
8  more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's
9  conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002)
10 (citations omitted).

11       To determine whether a claimant is disabled for purposes of the Act, the ALJ
12 follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of
13 proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett*
14 *v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether
15 the claimant is presently engaging in substantial gainful activity. 20 C.F.R.
16 § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe"
17 medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At
18 step three, the ALJ considers whether the claimant's impairment or combination of
19 impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P
20 of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically
21 found to be disabled. *Id.* At step four, the ALJ assesses the claimant's RFC and determines
22 whether the claimant is still capable of performing past relevant work. 20 C.F.R.
23 § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where the ALJ
24 determines whether the claimant can perform any other work in the national economy
25 based on the claimant's RFC, age, education, and work experience. 20 C.F.R.
26 § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*
27     . . .
28     . . .

III. **Analysis**

Plaintiff's opening brief raises two arguments. First, Plaintiff argues the ALJ erred when evaluating the opinions of Nurse Practitioner ("NP") Rosette, Dr. Haggar, and Dr. Higgins. (Pl. Br. at 11-24.) Second, Plaintiff argues the ALJ erred when rejecting her symptom testimony. (*Id.* at 24-30.) In response, the Commissioner concedes that a remand is necessary due to the ALJ's failure to apply the correct standards when evaluating the opinion of NP Rosette and defends the sufficiency of the ALJ's reasons for discrediting Plaintiff's symptom testimony. The Commissioner does not, however, make any effort to address Plaintiff's arguments concerning Dr. Haggar and Dr. Higgins.

For the following reasons, the Court concludes that the appropriate remedy is to remand Plaintiff's case for calculation and award of benefits. This conclusion is driven, in large part, by the Commissioner's failure to respond to Plaintiff's arguments.

A. Medical Sources

1. **2017 Regulations**

In early 2017, the SSA amended the regulations for evaluating medical evidence. *See* Revisions to Rules Regarding Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017). The amended regulations apply to claims filed on or after March 27, 2017. *Id.* The parties agree that Plaintiff filed her application after the effective date. (Pl. Br. at 2 n.2, Def. Br. at 3.) They disagree, however, about how (if at all) the new regulations change the Court's analysis.

Under the old regulations, "[t]he law in the Ninth Circuit [was] that, although the ALJ must consider all medical opinion evidence, there is a hierarchy among the sources of medical opinions. Those who have treated a claimant are treating physicians, those who examined but did not treat the claimant are examining physicians, and those who neither examined nor treated the claimant are nonexamining physicians." *Latahotchee v. Comm'r of Soc. Sec. Admin.*, 2021 WL 267909, *4 (D. Ariz. 2021) (citation omitted). Based on this hierarchy, the Ninth Circuit consistently ruled that an ALJ may only reject a treating physician's opinion by making "findings setting forth specific, legitimate reasons for doing

so that are based on substantial evidence in the record." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

The 2017 regulations provide that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion . . . . The most important factors we consider when we evaluate the persuasiveness of medical opinions . . . are supportability . . . and consistency." 20 C.F.R. § 404.1520c(a). Other factors, which an ALJ "may, but [is] not required to[] explain" when evaluating the persuasiveness of a medical opinion, are the medical source's "relationship with the claimant," "specialization," "familiarity with the other evidence in the claim," and "understanding of our disability program's policies and evidentiary requirements." *Id.* § 404.1520c(b)(2), (c).

Plaintiff acknowledges that the 2017 regulations "rescind the regulatory 'treating physician rule[]' that previously gave deference to opinions from claimant's treating physicians." (Pl. Br. at 12.) Plaintiff contends, however, that the Ninth Circuit's "common law" hierarchy is "arguably unchanged" and "treating physicians' medical opinions may still be entitled to deference." (*Id.* at 13 n.9.)

The Court disagrees for the reasons stated in its earlier decisions in *Pennock v. Comm'r of Soc. Sec. Admin.*, 2020 WL 6796768, *3 (D. Ariz. 2020) (citing *Schisler v. Sullivan*, 3 F.3d 563 (2d Cir. 1993)), and *Toback v. Comm'r of Soc. Sec. Admin.*, 2022 WL 60548, *2 (D. Ariz. 2022) ("The new regulations eliminate the previous hierarchy of medical opinions."). Although the Ninth Circuit has not yet weighed in on this issue, many other district courts have reached the same conclusion.[1] *See, e.g.*, *Stipkovich v. Comm'r of Soc. Sec. Admin.*, 2021 WL 467189, *10 (N.D. Ohio 2021) ("[T]o the extent Stipkovich argues . . . that the 'treating physician rule' still survives despite the new regulation eliminating that rule, such an argument fails. . . . [T]hat argument has been rejected by other courts, and the undersigned finds their reasoning persuasive.") (citing *Pennock* and

---

[1] The Court appreciates Plaintiff's candor in identifying *Pennock* and *Alonzo v. Comm'r of Soc. Sec. Admin.*, 2020 WL 1000024, *3 (D. Ariz. 2020), as examples of authority contrary to her position. (Pl. Br. at 13 n. 9.)

*Schisler*); *Jones v. Saul*, 2021 WL 620475, *6-9 (E.D. Cal. 2021) (holding that the new regulations are "valid and entitled to deference," "not contrary to the statute," and "displace[] contrary pre-existing caselaw") (capitalization omitted).

Nevertheless, even under the amended regulations, the ALJ's findings must still "continue to satisfy metrics of both articulation and validity to survive review." *Shelley D. v. Kijakazi*, 2021 WL 4443322, *7 (D. Idaho 2021). Thus, an ALJ must "explain how [the ALJ] considered the supportability and consistency factors for a medical source's medical opinions." 20 C.F.R. § 404.1520c(b)(2). That explanation must still be supported by substantial evidence. 42 U.S.C. § 405(g) ("[F]indings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").

## 2. The ALJ Erred When Evaluating The Opinion Of NP Rosette

NP Rosette is Plaintiff's treating nurse practitioner. On March 27, 2018, NP Rosette assessed Plaintiff's mental capacity and opined that she had "extreme" limitations in her ability to understand, remember, and carry out short, simple instructions; perform activities within a schedule at a consistent speed; sustain an ordinary routine without special supervision; interact appropriately with supervisors and coworkers; respond appropriately to work pressures in a usual work setting; and respond appropriately to changes in a routine work setting. (R. 721.) NP Rosette concluded that Plaintiff's limitations would cause her to be off-task for at least thirty percent of an eight-hour workday and that Plaintiff would need to miss more than five days of work per month. (*Id.* at 722.)

The ALJ found NP Rosette's opinion to be "not persuasive." (*Id.* at 23.) The ALJ stated that NP Rosette "checks off the most extreme limitation in almost every category (except, oddly enough, no limitation in dealing with the general public) essentially concluding that the claimant lacks all ability to function. This is grossly inconsistent with objective findings in the record, such as the testing at Ex. 6F. The report is also not[] consistent with other reports in the record and not consistent with the claimant's reports of being able to perform a number of daily activities." (*Id.* at 23.)

The parties agree that the ALJ erred when evaluating the opinion of NP Rosette.

(Pl. Br. at 16-18; Def. Br. at 3-4.) However, the Commissioner does not explain *why* the ALJ erred, instead merely asserting that the ALJ "did not sufficiently evaluate [NP] Rosette's opinion under the requirements of the revised regulations," and promises that "[o]n remand, the ALJ will correctly apply the revised medical evidence regulations." (Def. Br. at 3-4.)

The Court agrees that the ALJ erred. The 2017 regulations require the ALJ to "explain how [the ALJ] considered the supportability and consistency factors for a medical source's medical opinions." 20 C.F.R. § 404.1520c(b)(2). The ALJ clearly explained how he considered the consistency factor. (R. 23 ["grossly inconsistent," "not consistent with"].) However, the ALJ did not address the supportability factor, which states that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c (c)2. The ALJ did not explain if, or how, NP Rosette's opinion is supported by medical evidence.

Presumably, the Commissioner conceded that a remand is necessary because the ALJ failed to address supportability. However, Plaintiff argues that the ALJ's consistency explanation is *also* flawed. (Pl. Br. at 16-18.) Because the Commissioner does not respond, the Court finds the issue of the ALJ's consistency explanation to be forfeited.[2]

---

[2] In past SSA appeals, the Commissioner has conceded error on one issue and argued that "the Court need not address" other alleged errors because the Commissioner endorses the plaintiff's overall request for remand. *See, e.g.*, *Aljanabi v. Comm'r of Soc. Sec. Admin.*, 2022 WL 486265, *5 (D. Ariz. 2022). The logic behind this tactic has never been clear to the Court, especially given that compounding errors would naturally factor into the Court's decision between remanding for further proceedings or for calculation of benefits. In *Aljanabi*, however, the Commissioner at least (1) explicitly argued that the Court need not address the remaining issues and, more importantly, (2) provided some reasoning in the alternative as to why the ALJ's secondary analysis was *not* erroneous. *Id.* In that case, the Court still found that the Commissioner's cursory alternative argument did "not begin to approach a meaningful response to Plaintiff's arguments" and found the issue to be forfeited. *Id.* at *6. Nevertheless, in an "abundance of caution," the Court went on to analyze the ALJ's evaluation. This case presents an even clearer example of forfeiture. Although the Commissioner vaguely concedes reversible error as to NP Rosette, the Commissioner does not suggest that it is unnecessary to resolve Plaintiff's challenge to the ALJ's "consistency" explanation or make any attempt—even half-hearted—to defend that explanation. The Commissioner also fails, as discussed below, to so much as mention Plaintiff's challenges as to Drs. Haggar and Higgins.

1 *Latahotchee*, 2021 WL 267909, *4 ("Defendant does not bother to address Plaintiff's argument . . . . Defendant therefore concedes the correctness of Plaintiff's argument on that point.").

### 3. **The ALJ Erred When Evaluating The Opinion Of Dr. Haggar**

Dr. Haggar examined Plaintiff at the SSA's request. (R. 637-44.) Dr. Haggar diagnosed major depressive disorder, anxiety disorder, and posttraumatic stress disorder. (*Id.* at 642.) Dr. Haggar opined that Plaintiff would be unable to maintain attention and concentration for extended periods of time, would have trouble interacting with others, and would easily be overwhelmed with new tasks. (*Id.* at 643-44.)

The ALJ found Dr. Haggar's assessment to be "generally persuasive in the areas regarding [Plaintiff's] understanding and memory and ability to carry out simple instructions" but "unpersuasive" with respect to the issues of "hallucinations and paranoia." (*Id.* at 22.) The ALJ's rationale for this finding of unpersuasiveness was that Dr. Haggar's assessment was "contradicted by her own findings during the examinations and appear to be based solely on the claimant's self-reporting." (*Id.* at 22-23.) The ALJ also discredited other aspects of Dr. Haggar's assessment, stating that "[h]er opinion as to the claimant's social restrictions is self-contradictory (she opined the claimant could get along with supervisors and coworker, but might have trouble interacting with others, and could only maybe interact with the general public), and inconsistent with objective evidence showing the claimant socializing with friends and family. The opinion that the claimant would be overwhelmed with new tasks again is not [sic] undercut by Dr. Hagger's own observations about the claimant's ability to concentrate, is inconsistent with Dr. Filner's observations of the same, and is therefore not persuasive. But the opinion that the claimant could manage funds in her own interest is persuasive based on these same grounds." (*Id.*)

Plaintiff assigns error to the ALJ's evaluation of Dr. Haggar's opinion in her Statement of Issues and explains her reasoning in the Opening Brief. (Pl. Br. at 1, 18-20.) The Commissioner does not respond to Plaintiff's assignment of error at all. Thus, the

issue is forfeited. *Latahotchee*, 2021 WL 267909, *4 ("Defendant does not bother to address Plaintiff's argument . . . . Defendant therefore concedes the correctness of Plaintiff's argument on that point.").

Although the Court rules that the Commissioner has forfeited the issue, the Court also notes that an ALJ's findings are conclusive only if supported by substantial evidence. 42 U.S.C. § 405(g). The ALJ's evaluation of Dr. Haggar's opinion does not contain a single citation to record evidence. (R. 22-23.)

### 4. **The ALJ Erred When Evaluating The Opinion Of Dr. Higgins**

Dr. Higgins examined Plaintiff and observed neurological deficits, including a poor result on a mental status examination. (R. 884-888.) Dr. Higgins diagnosed vascular dementia with behavioral disturbance, frontal lobe dysfunction/executive function deficit, memory loss (bilateral temporal dysfunction), severe depression, severe anxiety, chronic post-traumatic stress disorder, and moderate dementia. (*Id.* at 884-85.) Dr. Higgins opined that Plaintiff could not handle her financial, medical, or day-to-day affairs without assistance. (*Id.* at 886.)

The ALJ found Dr. Higgins' assessment to be "unpersuasive." (*Id.* at 23.) The ALJ stated that "[i]n evaluating Dr. Filner's opinions, the undersigned is well aware of the very limiting detail contained in his report Ex. 17F/18F. Further, the undersigned has accounted for Dr. Higgins' objective findings (and reconciled those with the sometimes contradictory findings in other places in the record) with exceptionally stringent restrictions in the RFC such as a limitation to GED reasoning level 1. However, the simple fact is that Dr. Higgins' opinions (e.g., the claimant cannot live independently and requires assistance with all activities of daily living) cannot be reconciled with some of his own findings. For example, Dr. Higgins found that the claimant displayed no indications of hallucinations, displayed adequate attention and comprehension, was fully cooperative, and her behavioral slowing was mild. Those findings are far more line with the objective testing at Exhibit 6F than they are with the conclusion that the claimant is incapable of living independently. Furthermore, there is no indication that Dr. Higgins took into account the unremarkable

findings contained throughout this record, let alone the claimant's activities of daily living, in rendering his opinions. Ex. 2F/13l 6F; 7F. Accordingly, his opinion while partially supported, is not wholly consistent with the record. It is for these reasons not persuasive." (*Id.* at 23.)

Plaintiff assigns error to the ALJ's evaluation of Dr. Higgins's opinion in her Statement of Issues and explains her reasoning in the Opening Brief. (Pl. Br. at 1, 20-24.) The Commissioner does not respond to Plaintiff's assignment of error at all. Thus, the issue is forfeited. *Latahotchee*, 2021 WL 267909, *4 ("Defendant does not bother to address Plaintiff's argument . . . . Defendant therefore concedes the correctness of Plaintiff's argument on that point.").

### B. The ALJ Did Not Err When Rejecting Plaintiff's Symptom Testimony

In her disability report, Plaintiff stated that she could not work because of depression, paralysis, and PTSD. (R. 229.) She testified that she struggles with daily activities, does not leave the house often, has panic attacks, hallucinations, headaches, trouble concentrating, and back and arm pain. (*Id.* at 20 [ALJ's summary]; 40-50 [Plaintiff's testimony].) In her function report, Plaintiff stated she has trouble lifting, bending, standing, walking, concentrating, following instructions, and with memory. (*Id.* at 255-260.)

The ALJ discredited Plaintiff's testimony for at least four reasons. (*Id.* at 20-21.) The ALJ reasoned that the severity of Plaintiff's alleged symptoms was contradicted by objective medical findings, Plaintiff's activities of daily living, and Plaintiff's course of treatment (including improvement with treatment and periods of treatment non-compliance) and that Plaintiff's claims of hallucination and panic were inconsistent throughout the record. (*Id.* at 21.)

Plaintiff argues that the ALJ's proffered reasons for discrediting her symptom testimony were legally insufficient. First, Plaintiff argues the ALJ failed to meet the SSA's requirement of identifying with particularity *which* alleged symptoms were inconsistent with other evidence. (Pl. Br. at 25.) Second, Plaintiff argues the ALJ applied an

inappropriate standard when analyzing the severity of her symptoms. (*Id.* at 26.) Third, Plaintiff argues that evidence of medical treatment does not contradict her alleged symptoms. (*Id.* at 27, 29.) Fourth, Plaintiff argues her daily living activities do not contradict her alleged symptoms because the activities in question are limited in scope and duration. (*Id.* at 27-28.) Fifth, Plaintiff argues the ALJ's observations about her hallucinations and her alleged non-compliance with treatment, at least as explained by the ALJ, are not reasonable bases to reject her testimony. (*Id.* at 28-29.)

The Commissioner responds, first, that the ALJ reasonably identified record evidence that conflicted with Plaintiff's alleged symptoms. (Def. Br. at 6-8.) Second, the Commissioner argues the ALJ properly determined that Plaintiff's activities of daily living called into question the severity of her symptoms. (*Id.* at 7.) Third, the Commissioner argues the ALJ's observations about the "generally conservative" course of treatment undertaken by Plaintiff were a valid reason to discount her testimony. (*Id.*)

Plaintiff replies by asserting that the Commissioner did not make any attempt to defend (1) the ALJ's failure to connect her symptom testimony to the ALJ's proffered reasons for disbelieving that testimony, or (2) the ALJ's failure to apply the appropriate standards of review. (Reply at 3-7.)

An ALJ performs a two-step analysis to evaluate a claimant's testimony regarding pain and symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*)). If the claimant presents such evidence, then "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014-15 (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). This is the most demanding standard in Social Security cases. *Id.* at 1015.

Applying these standards, the Court finds no error. The ALJ explicitly connected

Plaintiff's alleged symptoms to evidence that could be rationally construed as contradicting Plaintiff's testimony. (R. 17-18.) For example, Plaintiff reported that she experiences hallucinations. (*Id.* at 21 [citing *id.* at 353].) But the ALJ noted that Plaintiff has denied experiencing hallucinations. (*Id.* at 21 [citing, *e.g.*, *id.* at 666 ("Reports no delusions. No hallucinations reported."); *id.* at 649 ("Denies audio or visual hallucinations.").] Such inconsistency is a valid reason for an ALJ to discount symptom testimony, *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 884 (9th Cir. 2006), and the statements cited by the ALJ are substantial evidence to support his reasoning.

Although Plaintiff identifies various reasons why a different factfinder might have been able to reconcile this evidence with her symptom testimony, the ALJ's finding of inconsistency was rational and, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas*, 278 F.3d at 954.

Given these conclusions, and especially given the Court's ultimate decision to remand Plaintiff's case for calculation and award of benefits, it is unnecessary to resolve whether the ALJ's additional proffered reasons for discounting Plaintiff's symptom testimony were specific, clear and convincing, and supported by substantial evidence. Even if not, substantial evidence supports the ALJ's ultimate conclusion. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) ("So long as there remains substantial evidence supporting the ALJ's conclusions on . . . credibility and the error does not negate the validity of the ALJ's ultimate [credibility] conclusion, such is deemed harmless and does not warrant reversal.") (alterations in original) (internal quotation marks omitted); *see also Magnotti v. Comm'r of Soc. Sec. Admin.*, 2021 WL 4025959, *4 (D. Ariz. 2021).

      C.    <u>The Appropriate Remedy Is To Remand Plaintiff's Case For Calculation And Award Of Benefits</u>

Plaintiff requests that the Court remand this case to the ALJ for calculation and award of benefits. (Pl. Br. at 20.) The Commissioner, in what appears to be a cautionary

tale about the perils of the copy-and-paste shortcut, requests that this Court *affirm* the ALJ's ruling (Def. Br. at 9) despite having elsewhere conceded the ALJ's error and requested remand for further proceedings. (Def. Br. at 2, 3; *see also* Reply at 3 ["To what part of the Commissioner's brief should [Plaintiff] reply? First, the Commissioner asserts, 'Further proceedings are necessary . . . .' Then, the Commissioner urges that 'this Court affirm the ALJ's decision . . . .'"].) Although the Commissioner sets forth *pro forma* objection to the credit-as-true rule at length, NP Rosette's opinion—and the Commissioner's concession of error—does not feature in the Commissioner's "Remedy" section at all. (Def. Br. at 9-11.)

The credit-as-true rule determines whether a case should be remanded for benefits. The rule, if applied here, would result in remand of Plaintiff's case for a calculation and payment of benefits. *Garrison*, 759 F.3d at 1020. It applies if each part of a three-part test is satisfied. *Id.* First, the record must have been fully developed and further administrative proceedings would serve no useful purpose. *Id.* Next, the ALJ must have failed to provide sufficient reasons for rejecting the claimant's testimony or medical opinions. *Id.* Finally, if the improperly discredited evidence were credited as true, then the ALJ would be required to find the claimant disabled. *Id.* Even if all elements of the credit-as-true rule are met, the Court maintains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021.

Here, the record has been fully developed and further administrative proceedings would serve no useful purpose. The opinions of NP Rosette, Dr. Haggar, and Dr. Higgins thoroughly detail her functional limitations. Either affirmatively or through forfeiture, the Commissioner has conceded that the ALJ erred when evaluating all three of those opinions. The vocational expert opined that, if NP Rosette's opinion were credited as true, Plaintiff would be entitled to benefits. (R. 55.) Additionally, Plaintiff has persuasively demonstrated that, if either Dr. Haggar's or Dr. Higgins's opinions were credited as true, Plaintiff would also be entitled to benefits. (Pl. Br. at 23-24, 30.) The Commissioner does not argue otherwise. Finally, the Court does not have serious doubt that Plaintiff is, in fact,

disabled, even though the ALJ did not err when rejecting her symptom testimony. Given Plaintiff's limited education (R. 44-45), nonexistent work history (*id.* at 39), ill health, the nearly five years that have elapsed since Plaintiff applied for disability, and the Commissioner's failure to respond to many of Plaintiff's claims of error, a remand for further proceedings would be unnecessary and inappropriate here.

**IT IS THEREFORE ORDERED** reversing the April 14, 2020, decision of the Administrative Law Judge (*id.* at 14-25), as upheld by the Appeals Council (*id.* at 1-3).

**IT IS FURTHER ORDERED** remanding this case to the Social Security Administration for an award of benefits.

**IT IS FURTHER ORDERED** directing the Clerk to enter judgment accordingly and close this case.

Dated this 14th day of March, 2022.

Dominic W. Lanza
United States District Judge